JOURNAL ENTRY AND OPINION
Plaintiff, David Babcock ("husband"), appeals the trial court's division of marital assets and award of spousal support to defendant, Janet Babcock ("wife"), in their divorce. The parties had been married for thirty years and had two grown sons from the marriage.
Husband makes $54,000 a year. Wife worked for six years as a teacher prior to the birth of the first child but stayed home with the children until the younger son graduated from high school. Both parties are 52 years old and both have master's degrees. Husband obtained his master's during the marriage; wife had completed all but one quarter of hers prior to the marriage. The wife's degree is in remedial reading. She also has a real estate license, which is inactive. She currently earns approximately $19,000 a year working part-time for an airline, and substitute teaches for $86.00 a day. In order to teach full-time, she would need to be recertified.
The court ordered husband to pay for nine years of spousal support at $1,326.00 per month, which amount included poundage[1] of 2%. His temporary spousal support had been $1,500 per month with poundage over and above that $1,500. Wife had asked for $1,500 per month for ten years. Husband timely appealed, stating four assignments of error. The first two assignments challenge the amount of spousal support.
"I. The trial court erred in granting defendant-appellee, herein referred to as "defendant" [sic] spousal support of $1,326.00 per month, including two percent processing fee, for nine years without taking into account defendant's education, prior employment and defendant's potential to become self supporting in less than nine years."
Husband argues that the trial court erred in the amount of spousal support it awarded to wife. An appellate court reviews the trial court's decision under an abuse of discretion standard. Under this standard a trial court is affirmed unless its decision is arbitrary, capricious, or unreasonable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 21. A reviewing court cannot substitute its judgment for that of the trial court unless, after considering the totality of the circumstances, the appellate court finds that the trial court abused its discretion.Holcomb, supra, at 131, 541 N.E.2d at 599.
In awarding spousal support, the trial court is required to consider the following factors listed in R.C. 3105.18 (C)(1):
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable."
The trial court here addressed each factor, including those raised by husband He argued that the court failed to consider wife's level of education and her ability to return to the work force. The court did, however, address both of these factors in its judgment entry, stating that wife had a master's degree in remedial education and that she needed to be recertified in order to obtain her teaching license. The court also noted that "[b]y agreement of the parties, [wife] did not return to work until the children graduated from high school." Magistrate's report at 5. The report also noted that husband had had the same job for over twenty-five years and currently earns $54,000.
In a similar case, the Third Appellate District upheld an award of support for twenty years to a wife who had been married for twenty-seven years and who had significantly less income than the husband Stallsmith v. Stallsmith (April 13, 1994), Marion App. No. 9-93-59.
This court, on the other hand, found an abuse of discretion when a trial court granted fifty months of spousal support to a wife in a twelve-year marriage who was expected to complete her law degree in less than thirty-six months. The appellate court reduced the duration of the spousal support to thirty-six months because it did "not find any articulation in the court's judgment entry as to why the spousal support should continue" beyond the wife's graduation from law school. Thompson v. Thompson (April 21, 1994), Cuyahoga App. No. 64894.
The evidence in the case at bar, however, provides sufficient justification for the duration of the spousal support. Although husband argues that wife could reactivate her real estate license, the record reveals that she was particularly unsuited to this line of work and unsuccessful at it. Husband presented no evidence that reactivation of this license would in any way enable wife to become self-supporting.
Husband also argues that it should not take wife nine years to obtain her teaching certificate and that she should not need spousal support for the entire nine years. Wife testified that teaching jobs in her specialty were not easy to find. In his brief husband argues that the city of Cleveland is so desperate for teachers that it has imported them from India and that therefore wife should be able to get work in Cleveland Nothing in the record, however, shows that the available teaching jobs in Cleveland are in the specialty wife is educated to teach. Nor does the record contain any evidence concerning the amount of money wife could make in a full-time teaching position. Further, we note that husband's level of income was achieved over twenty-five years with the same employer. Wife, starting over at the age of 52, does not have the time in the remainder of her career to achieve that level of income. Without evidence that wife could realistically reach a comparable income in the time frame noted, we find no abuse of discretion.
The trial court did not abuse its discretion in awarding wife the duration of spousal support that it did. This assignment of error is without merit.
"II. The trial court erred in granting defendant spousal support in an amount that is more than fifty percent (50%) of plaintiff's monthly take-home income."
Husband also argues that the amount of spousal support exceeds the amount of take-home pay he will have after the order goes into effect.
"Courts in this state derive their power to award sustenance alimony from the statutes. R.C. 3105.18(A) and (B) provide a trial court with guidelines for determining whether alimony is necessary and the nature, amount and manner of alimony payments."Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 414, 75 O.O.2d 474, 482, 350 N.E.2d 413, 423. The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case, but such discretion is not unlimited.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1299.
In determining the amount of spousal support, the court relies not on the relative assets of the parties but on the need of the party receiving support. The "trial court must determine whether there is a need for sustenance alimony, and, if so, the amount needed and the duration of the need. Need is `[a] relative term, the conception of which must, within reasonable limits, vary with the personal situation of the individual employing it. [The] [t]erm means to have an urgent or essential use * * *.' Black's Law Dictionary (5 Ed. 1979) 929." Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 68-69.
First, we note that the only law husband cites to support his argument is Farnsworth v. Farnsworth (May 7, 2003), Medina App. No. 02CA0074-M, which is clearly distinguishable from this case. In Farnsworth, as husband states in his brief, "`[t]he Trial Court had ordered husband to pay spousal support in an amount in excess of 50% of his pretax income.'" Appellee's brief at 8, emphasis added. Here, husband claims the amount is over half of his take-home pay. Husband does not say that it is over half of his post-tax income. Without any indication of what non-tax deductions husband has taken from his paycheck, this information is not reliable. For example, the record shows that he contributes to his deferred compensation plan at work. Although this income is not included in his paycheck, it is still income that the court should consider.
Further, after the divorce decree is final, the tax burden for the money she receives as spousal support will shift to wife. IRS § 71. Without adjustments, husband's pre-decree checks, therefore, cannot be applied to her post-decree support. We conclude that husband has failed to demonstrate any abuse of discretion on the part of the trial court in its award of spousal support. This assignment of error is without merit.
"III. The trial court erred in failing to reserve jurisdiction to review its award of spousal support."
Husband argues that because circumstances could change in the nine years of spousal support, the trial court erred in failing to reserve jurisdiction over the issue.
The retention of jurisdiction over spousal support is left to the discretion of the court.
"Formerly, a trial court's continuing jurisdiction to modify an award of spousal support was implied in the decree of divorce. See Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 350 N.E.2d 413. In 1986, the General Assembly amended R.C. 3105.18 to provide that the trial court does not have continuing jurisdiction to modify spousal support unless the court specifically reserves such jurisdiction in the decree of divorce. See R.C.3105.18(E)(1). The decision to reserve jurisdiction to modify an award of spousal support is left to the sound discretion of the trial court. See Johnson v. Johnson (1993), 88 Ohio App.3d 329,623 N.E.2d 1294."
McLaughlin v. McLaughlin, (March 26, 2001), Athens App. No. 00CA14, 2001 Ohio 2450, at *5.[2] See also Shannon v.Shannon (Jan 28, 1993), Cuyahoga App. No. 61714.
"The statute does not indicate when the court should retain continuing jurisdiction over alimony by inserting language to that effect in the divorce decree. We assume that this matter falls within the broad scope of the court's inherent discretion over the general subject of spousal support. Although the statute does not provide any guidance, the rationale underlying the court's holding in Wolfe is helpful to the analysis. TheWolfe court recognized that, in the case of an alimony award of unlimited duration, the parties should be able to petition the domestic relations court to modify the decree to fit changing circumstances."
Link v. Link (June 20, 1997), Lake App. No. 96-L-067. 1997 Ohio App. LEXIS 2680, at *11. Here, however, the issue is failure to reserve jurisdiction not over an award of indefinite duration but rather an award of limited, albeit extended, duration.
Addressing an award of limited duration, husband relies onSmith v. Smith (Dec. 31, 1998), Lucas App. No. L-98-1027. In Smith, the court ruled that it was an abuse of discretion for the trial court to fail to reserve jurisdiction over spousal support for a period of nine years. Although the duration of the marriage, age of the parties, and work history of the wife inSmith are similar to the facts in the case at bar, the significant difference is the husband's line of work. In Smith,
the husband was in construction, which, the Smith court observed, is not steady work, and the husband's health could prevent him from continuing in this line of work. That circumstance differs significantly from husband here, who has worked for over twenty-five years in the same desk job. Clearly, husband's job is far less dependant on his physical condition. Additionally, his work is far more reliable. He has been continuously employed in the same government job for over a quarter of a century. This hardly compares to "the vagaries of the type of construction business in which [the husband inSmith] is engaged."
A body of case law exists, however, stating that for spousal support of extended duration, the trial court errs in failing to retain jurisdiction over the award. In Nori, the marriage had been of long duration and the wife needed to be recertified to teach after a long period of unemployment. The trial court inNori ordered support and did not reserve jurisdiction over the award. The appellate court held "[t]he present case involves a ten-year award of alimony. During that time, any number of unforeseen circumstances could arise. [Husband] could become disabled or suffer a loss of income. [Wife], for some unforeseen reason, may not be able to obtain her teaching certificate or she may be able to demonstrate at some point in the future that she is definitely unemployable. A provision must be made for such changes of circumstances." Nori v. Nori (1989),58 Ohio App.3d 69, 73. The appellate court, therefore, reversed and remanded the case because of the trial court's failure to reserve jurisdiction to modify the alimony award.
Among other cases addressing this issue, the Link court, supra, found that failure to reserve jurisdiction for a four-year term of support did not constitute an abuse of discretion. The court in Straube v. Straube (Aug.1, 2001), Lake App. No. 2000-L-074, however, held that "six years is too long a duration for the court to predict the parties' incomes and monthly expenditures. Thus, in reviewing the totality of the circumstances, the trial court abused its discretion by failing to retain jurisdiction to consider modifying spousal support to fit changing circumstances." Id. at *14. We agree with this analysis.
In the case at bar husband argues that he could retire or be laid off. Although he testified that he will soon be eligible for PERS retirement, nothing in his testimony indicated any instability in his job or any requirement that a 52 year-old would be forced to retire early. Nonetheless, as the Nori court noted, in addition to some unforeseen adverse event happening to husband, wife could also have a change of circumstances which would require either less or more support, or a longer term of support. We conclude, therefore, in a support order of nine years under the circumstances here, the failure of the court to retain jurisdiction over the order was an abuse of discretion. This assignment of error has merit.
"IV. The trial court erred in its division of marital property resulting in an inequitable and unequal division of marital assets."
Husband's final argument concerns the trial court's division of marital assets. Husband disputes not the values the court assigned to the assets, but rather the math the court used to arrive at its final division of assets. A review of the court's computations shows husband is correct.[3]
The parties owned a home with a value of $115,000, which has an equity line of credit on it for $22,734.34 They also own three vehicles: a 1986 Porsche, a 1990 Toyota Celica, and a 2000 Mountaineer. They had owned a golf shop, which went out of business. They still owe $8,000 in credit card debt from the golf shop[4] and also owe $7,985.00 in family credit card debt.
The court divided husband's PERS pension equally between the two. It divided the marital assets by giving husband the following: his deferred compensation of $30,133; his IRA of $5,400; his life insurance of $7,505; the Porsche and Celica with a value of $6,000, as he himself testified; the golf equipment valued at $1,000 from the defunct shop; and his one-half equity, valued at $46,500, in the marital home.[5] This division gave husband a total of $96,813.
The court gave wife her 401K, valued at $10,000; her two life insurance policies, valued at $2,226; the Mountaineer, valued at $7,000; and her one-half equity, valued at $46,500, in the home. Wife was awarded a total of $65,752, with husband receiving $30,813 more than wife.
The court then divided the marital debt as follows: husband to pay the $7,908 of MasterCard debt and the $7,620 of MNBA debt. Wife was to pay back the $22,734 line of credit on the marital home. Because husband's debts only totaled $15,528 and wife's totaled $22,734, the court found a difference of $7,206 more owed by wife than by husband Before adjustment, husband would receive a value of $81,010, and wife would receive a value of $42,991, for a difference of $38,019.
To reduce this difference, the court awarded wife the marital home and ordered her to pay husband $8,481 for the difference between the $38,019 in his balance column and the $46,500 for his share of the house.
The court gave the following chart on its division of assets.
HUSBAND WIFE
Deferred compensation $30,133.00 401K $10,000.00 IRA Putnam 5,400.00 Aetna life 1,120.00 insurance
Mony life insurance 7,505.00 Mony life 1,105.00 insurance
Porsche and Celica 6,000.00 Mountaineer 7,000.00
Golf equipment 1,000.00 One-half 46,500.00 equity in marital home
One-half equity in 46,500.00 marital home
 TOTAL $96,538.00 TOTAL $65,752.00
The court stated: "The difference is $30,813.00."
The chart showing the court's allocation of marital debt follows:
HUSBAND WIFE
MasterCard $ 7,908.00 Line of credit $22,734.00
MBNA 7,620.00
TOTAL $15,528.00 TOTAL $22,734.00
The court computed the difference to be $7,206.00 and proceeded to adjust the difference as follows:
HUSBAND WIFE
Marital property $96,538.00 Marital property $65,725.00
Less marital debt 15,528.00 Less marital debt 22,734.00
$81,010.00 $42,991.00
The court then computed the difference as $38,019.00 and resolved this difference as follows:
"[Wife] testified that she wanted to keep the marital residence. To equalize the above division of property and debts. [Wife] owes [husband] $8,481.00 for his one-half interest in the marital residence ($46,500.00 — $38,019.00 = $8,481.00)."
The court erred, however, in failing to divide the difference of $38,019.00. Instead, the court subtracted it from the interest in the marital residence. The court's division need not be equal, but it must be equitable. Holcomb v. Holcomb (1989),44 Ohio St.3d 128. "Equitable" differs from "equal" in that the division need not be to the penny. Cherry v. Cherry (1981),66 Ohio St.2d 348; Moorev. Moore (October 24, 1985), Cuyahoga App. No. 49320. Nonetheless, the trial court must show its reasons for a clearly unequal division:
"After a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties and thereafter consider whether an award of sustenance alimony would be appropriate. Teeter v. Teeter (1985),18 Ohio St.3d 76, 18 OBR 106, 479 N.E.2d 890, citing to Wolfe v. Wolfe
(1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413. The trial court is vested with broad discretion in determining the appropriate scope of these property awards. Berish v. Berish
(1982), 69 Ohio St.2d 318, 23 O.O.3d 296, 432 N.E.2d 133. Although its discretion is not unlimited it has authority to do what is equitable. Cherry v. Cherry (1981), 66 Ohio St.2d 3438, 355, 20 O.O.3d 318, 322, 421 N.E.2d 1293, 1298. A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion. Section 3(B), Article IV of the Ohio Constitution; App. R. 12; Briganti v. Briganti (1984),9 Ohio St.3d 220, 222, 9 OBR 529, 531, 459 N.E.2d 896, 898;Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94,518 N.E.2d 1197, 1199."
Shannon v. Shannon, (January 28, 1993), Cuyahoga App. No. 61714. 1993 Ohio App. LEXIS 275, at *10. See also, Adams v.Adams (April 4, 1995), Jefferson App. No. 93-J-10, 1995 Ohio App. LEXIS 1441; Brett v. Brett (March 7, 1991), Cuyahoga App. No. 58001, 1991 Ohio App. LEXIS 943.
The court here did err in subtracting before it divided the difference. A review of the court's judgment entry reveals the problem. The court correctly noted a difference of $38,019 between the amount originally allocated to husband and the amount allocated to wife, so it shifted the entire amount to wife in the form of equity in the house. This gave wife an amount nearly $20,000 more than was awarded to husband A review of the figures shows that the court should have divided the $38,019 equally between the parties. The court noted that wife wished to keep the marital home, but it did not provide any reason for giving her nearly $20,000 more in marital assets to allow her to do that. Further, the court's entry stated it intended to "equalize" the division. The court never indicated it was basing its division on principles of equity.
We find the court's shifting of the entire $38,019 from husband to wife, without explanation or any compensating benefit to husband, to be an abuse of discretion. The trial court should either articulate its reasons for awarding a larger share of the marital assets to wife or it should rectify the imbalance in the award. This assignment of error has merit.
The case is affirmed in part and reversed in part for further proceedings consistent with this opinion.
This cause is affirmed in part and reversed in part.
It is, therefore, ordered that appellant and appellee share the costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Dyke, J., Concur.
[1] Poundage is the fee Child Support Enforcement Agency ("CSEA") charges for garnishing the support from the payor's income and remitting a check to the payee.
[2] The controlling statute, which took effect in 2001, is R.C.3105.18(E):
If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after May 2, 1986, and before January 1, 1991, or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
[3] Division of marital assets is governed by R.C. 3105.171(F), which requires consideration of all the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
(5) The economic desirability of retaining intact an asset or an interest in an asset;
(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
(9) Any other factor that the court expressly finds to be relevant and equitable.
[4] Additionally, the parties state they owe $8,900 in back rent from the golf shop but the court did not include this amount in the marital debt because they lacked documentation for it.
[5] The marital home was valued at $115,000.00.