DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant/Cross-Appellee, Randee Saluppo, and Appellee/Cross-Appellant, Steve Saluppo, appeal from the decision of the Summit County Domestic Relations Court. This Court affirms in part and reverses in part.
 I. {¶ 2} Appellant/Cross-Appellee, Randee Saluppo ("Wife"), and Appellee/Cross-Appellant, Steve Saluppo ("Husband"), were married on October 8, 1994. Thereafter, the parties had two children: I.S., born 5/24/97 and S.S., born 5/19/99. On May 31, 2002, Husband filed for divorce. On July 11, 2002, Wife filed an answer and counterclaim, also requesting a divorce. The trial court issued a temporary order on September 13, 2002, requiring, among other things, that Husband pay temporary child support to Wife. Thereafter, Husband filed a motion requesting that the parties undergo genetic testing regarding the parentage of the children. The trial court granted Husband's motion on February 5, 2003. Test results revealed that Husband is the father of the minor children.
 {¶ 3} On November 14, 2003, the trial court issued an order granting temporary physical possession of the parties' minor children to the paternal grandparents. The trial court modified this order on September 14, 2004, granting the parties companionship time with the children on alternating weeks. This matter was tried before the trial court on July 31, 2003, December 2, 2004 and December 30, 2004.
 {¶ 4} The trial court entered the parties' decree of divorce on January 24, 2005. Pursuant to the decree, (1) Wife was designated as the residential parent and legal custodian, (2) Husband was granted continuous contact with the children, (3) Husband was required to pay child support and (4) Wife was required to quitclaim her interest in the marital property to Husband. The decree also divided the parties' marital property and allocated the parties' marital debt.
 {¶ 5} On February 7, 2005, Wife filed a motion for new trial, for relief from judgment and for reconsideration, arguing that the divorce decree should have set a date certain for the payment of a lump sum property settlement. On February 15, 2005, Husband filed a motion for new trial, for relief from judgment and for reconsideration. On February 23, 2005, Wife filed a notice of appeal from the divorce decree. Both appeals were dismissed on March 25, 2005 for lack of a final appealable order. On April 13, 2005, the trial court issued an order overruling each of the parties' motions for new trial, for relief from judgment and for reconsideration. Wife then timely filed her notice of appeal on May 12, 2005, raising two assignments of error. Husband filed a notice of cross-appeal on May 19, 2005, raising three assignments of error.
 II. APPELLANT'S ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN MAKING A PROPERTY DIVISION THAT IS BOTH UNEQUAL AND INEQUITABLE."
 {¶ 6} In Wife's first assignment of error, she contends that the trial court erred in making an unequal and inequitable property division. We agree.
 {¶ 7} The distribution of marital property is governed by R.C. 3105.171. In divorce proceedings, the trial court must divide marital property in an equitable manner. R.C.3105.171(C)(1). A trial court is vested with broad discretion when fashioning this division of property. Bisker v. Bisker
(1994), 69 Ohio St.3d 608, 609. Accordingly, absent an abuse of discretion, a trial court's division of marital property will be upheld by a reviewing court. West v. West (Mar. 13, 2002), 9th Dist. No. 01CA0045, at *6. A trial court's decision relative to the distribution of property at the time of divorce does not constitute an abuse of discretion when such decision is supported by some competent, credible evidence. Sterbenz v. Sterbenz, 9th Dist. No. 21865, 2004-Ohio-4577, at ¶ 9, citing Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, 401.
 {¶ 8} Wife's argument that the trial court erred in making an unequal and inequitable property division is two-fold: (1) the property division was unequal in that it provided Husband with $22,000.00 more marital property than Wife and the trial court made no findings of fact to support this unequal division and (2) even if Wife was awarded an equal share of the marital property, the award would still be inequitable because the trial court permitted Husband to make payments over time.
Unequal Division
 {¶ 9} The trial court examined the parties' marital debt and assets and determined that the parties had $350,450.00 in marital assets and $52,536.00 in marital debt. Consequently, the court found that the net marital estate subject to division was $297,914.00. The trial court awarded Husband $349,177.00 in marital assets. The trial court allocated $40,336.00 of the marital debt to Husband which left him with $308,841.00 in net marital assets. The court awarded Wife $1,273.00 in marital asserts (Wife was awarded the 2002 Mercedes which had negative equity of $5,127.00). Wife was ordered to pay $12,200.00 of marital debt, which left her with net marital assets of negative $10,927.00. The trial court then made a distributive award by ordering "Husband [to] pay to Wife $148,847 within thirty (30) days of this order." Under our calculations, Husband was then left with $159,994.00 and Wife with $137,920.00 (after subtracting her negative $10,927.00 in marital assets).
 {¶ 10} Upon examination of the record, we find that Wife correctly asserts that the trial court made an unequal division of property without making findings of fact to support such a division. The distributive award amount of $148,847.00 equals one-half of the net marital estate ($297,914.00 ÷ 2 = $148,847.00). The trial court's unequal division appears to be a mistake. After making the distributive award, the trial court stated:
"The property award to Wife is reduced in the amount of $2,931.43 representing the net arrearages under the temporary order, for a net of $145,915.57."[1]
 {¶ 11} Although we presume that the trial court intended to award Wife a net $148,847.00 (which amounts to $145,915.57 after subtracting the amount Wife owed Husband under the temporary orders) and mistakenly failed to account for Wife's negative award of property and debt, the court made no findings of fact regarding this division. Consequently, we do not know whether the court intended to make such an unequal division.
 {¶ 12} When dividing marital property, "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Quigley v. Quigley, 6th Dist. No. No. L-03-1115, 2004-Ohio-2464, at ¶ 97, quoting Kaechele v.Kaechele (1988), 35 Ohio St.3d 93, paragraph two of the syllabus. This requirement is particularly important in a case such as this one involving an unequal division of marital assets.Green v. Shall, 6th Dist. No. L-03-1123, 2004-Ohio-1653, at ¶ 30, citing Szerlip v. Szerlip (1998), 129 Ohio App.3d 506, 512.
 {¶ 13} Here, the trial court made an unequal and inequitable division of property without making findings of fact to support such a division. It appears that the trial court failed to account for Wife's negative property award of $10,927.00. Under our calculations, Wife was actually awarded $137,920.00,[2]
which amounts to $22,000 less than the $159,994.00 awarded to Husband. We find error in this division.
Inequitable Division
 {¶ 14} Wife contends that even if the trial court awarded her an equal share of the marital property, the award would nonetheless be inequitable because it was not awarded as a lump sum payment and/or ordered to be paid within a reasonable time. After ordering Husband to pay Wife $148,847.00 within thirty days of the trial court's order, the court stated:
"If Husband is unable to secure the funds to pay the property award within thirty (30) days, he shall secure payment with a Promissory Note.
and
"Wife shall quitclaim to Husband her interest in the marital home. Husband shall indemnify and hold Wife harmless on the mortgage, taxes, and insurance. Wife may remain in the marital residence until thirty (30) days after the property award is paid. While in the residence, Wife shall pay the first mortgage, taxes, insurance, and utilities. Husband shall pay the equity loan."
 {¶ 15} Moreover, in its decision not to award spousal support, the trial court recognized that Wife cannot pay her living expenses until she receives her lump sum property award and then ordered:
"[E]ffective February 1, 2005, Husband shall pay to Wife the sum of $2,000.00 per month as payment on the property award. Payments made to Wife pursuant to this provision shall be deducted from the total amount awarded to Wife."
 {¶ 16} Wife argues that these payment provisions, when read together, produce an inequitable result. We find merit in this contention. Here, the trial court awarded nearly all the marital assets to Husband. As a result, Wife's marital assets had a negative value. The trial court attempted to equalize this award by making a distributive award. However, these provisions are inherently contradictory as one requires Husband to pay this amount in a lump sum while another provision permits Husband to pay $2,000.00/month. Notably, the latter provision does not reference any of the other provisions. The provision that addresses the promissory note does not indicate when this award is due. In addition, the provision that allows Husband to make payments over time does not account for interest. Husband has no incentive to make this payment in lump sum if he is permitted to make payments over time, without accounting for interest.
 {¶ 17} While there is no requirement that a trial court award interest on monetary obligations which arise from property divisions, the court is statutorily obligated to make an equitable division of the parties' marital property. R.C.3105.171(C)(1); Koegel v. Koegel (1982), 69 Ohio St.2d 355,357. Here, the trial court (1) failed to account for interest on the monthly payments and (2) provided no reason for permitting Husband to make monthly payments which will ultimately cost him less than making a lump sum payment.
 {¶ 18} In its decision denying the parties' motions for new trial, the trial court addressed these payment provisions, stating:
"The decision of the Court to permit payments on the judgment rather than requiring a lump sum payment was an attempt by the Court to balance an equitable division of the parties' assets and liabilities against Plaintiff's financial circumstances which make it difficult or impossible for him to borrow sufficient funds to pay the judgment."
However, the trial court cited no evidence in support of its assertion that Husband's financial circumstances hindered or precluded him from borrowing sufficient funds. To the contrary, Husband testified at the December 2, 2004 hearing that he had the means to buy out Wife's half-equity interest in the house. Husband's testimony reflects that he asked the court to allow him to buy out Wife's interest in the house. The parties stipulated that the equity in the house at the time the marital property was divided was approximately $193,343.00. It follows, therefore, that Husband had the means to borrow nearly $100,000.00.
 {¶ 19} There was no dispute regarding Husband's testimony that he could make a lump sum payment of at least $100,000.00. Had the court awarded the lump sum to Wife, she could have made a down-payment on a house or condominium for herself and the children. Without such a lump sum award, Wife will be unable to purchase a home for her and the children whereas Husband now resides in the marital home, making monthly payments to Wife over the next several years. Such a result clearly provides a windfall for Husband. We therefore find that the trial court abused its discretion by permitting Husband to make payments over time.
 {¶ 20} Reviewing the totality of the property division effectuated by the trial court, we find that such a division is inequitable. We therefore remand this case to the trial court for proceedings consistent with this opinion. Babcock v. Babcock,
8th Dist. No. 82805, 2004-Ohio-2859, at ¶ 58; App. R. 27. Wife's first assignment of error is sustained.
 APPELLANT'S ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN FAILING TO AWARD SPOUSAL SUPPORT TO THE WIFE."
 {¶ 21} In her second assignment of error, Appellant argues that the trial court erred in failing to award her spousal support. This Court agrees.
 {¶ 22} A trial court may award reasonable spousal support in a divorce action after a property division is effectuated. R.C.3105.18(B). An award of spousal support is within the broad discretion of the trial court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. This court will not reverse the trial court's decision absent an abuse of discretion. Id. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Id. The burden is on the party challenging the award to establish an abuse of discretion. Shuler v. Shuler (Oct. 27, 1999), 9th Dist. No. 98CA007093, at *2.
 {¶ 23} R.C. 3105.18(C)(1) requires the trial court to consider fourteen factors in determining whether to award spousal support; however, the amount of support remains within the discretion of the court. Moore v. Moore (1992),83 Ohio App.3d 75, 78, citing Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,130-31. Those factors include:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 24} The trial court indicated in its judgment entry that it considered all of the statutory factors contained in R.C.3105.18. The court also made the following findings: (1) Husband earns substantially more than Wife, (2) Husband has greater earning ability than Wife, (3) both parties are in good physical, mental and emotional health, (4) the parties have equivalent education, (5) the court divided the assets and liabilities equally, (6) Wife was out of the work force while she cared for the children but has since returned to her field and (7) the income and earning ability of Husband supports an award of spousal support but the remaining factors support the court's determination that spousal support is not reasonable or appropriate.
 {¶ 25} In addition, the court found that the marriage was short and that if spousal support was reasonable and appropriate, then the term would have been thirty-five months in length. The court found that Husband had been paying temporary spousal support for thirty-two months. The court also recognized that Wife would not be able to pay her living expenses until she received the property award. In conjunction therewith, the court stated:
"[E]ffective February 1, 2005, Husband shall pay to Wife the sum of $2,000.00 per month as payment on the property award. Payments made to Wife pursuant to this provision shall be deducted from the total amount awarded to Wife."
 {¶ 26} Wife asserts that several of the factors contained in R.C. 3105.18(C)(1) support an award of spousal support, including (a) income of the parties, (b) relative earning abilities, (f) responsibilities of Wife as custodian of the children, (g) the standard of living established during the marriage, (i) the relative assets and liabilities of the parties, (k) the time and expense necessary to acquire education, training and job experience to be self-supporting and (m) the lost income production capacity resulting from Wife's marital responsibilities.
 {¶ 27} Under R.C. 3105.18(C)(1), the trial court is required to consider "all of the following factors." Upon review of these factors, we find that the trial court erroneously placed great significance on one factor — length of the marriage — and failed to adequately consider the remaining factors.
 {¶ 28} In our disposition of Wife's first assignment of error, we determined that the trial court did not equally distribute the parties' assets and liabilities. R.C.3105.18(C)(1)(i). Prior to and throughout the marriage, Husband was able to cultivate and grow his business. In contrast, Wife stopped working when the parties had their first child and did not work outside the home again until the parties' separation several years later. R.C. 3105.18(C)(1)(m). Wife testified at trial that she earns slightly more than minimum wage and is able to work approximately thirty hours/week. For purposes of calculating child support, the trial court found that Husband's income is $79,800.00. Despite the parties' similar education experience, Husband has a significantly higher income and earning ability at the present time. R.C. 3105.18(C)(1)(a)/(b).
 {¶ 29} Moreover, the parties' children are young and, although they are both in school during the day, Wife is responsible for getting them to school in the morning and caring for them after school. Consequently, it would be difficult for her to obtain full-time employment that would enable her to be at home with the children immediately after school. R.C.3105.18(C)(1)(f).
 {¶ 30} The totality of the factors in the present case do not support the court's decision not to award spousal support. Under the court's award, Wife will not be able to purchase a house or condominium, she is left with a car that has negative equity and she has training and experience to earn only minimum wage. Equity requires that a party receive at least sufficient spousal support to bring him or her to a "reasonable standard of living, comparable to the standard maintained during the marriage."Berthelot v. Berthelot, 154 Ohio App.3d 101, 114,2003-Ohio-4519, at ¶ 47, quoting Addy v. Addy (1994),97 Ohio App.3d 204, 208. We find that the court's award will not place Wife in such a position Therefore, we find that the trial court abused its discretion in failing to award Wife spousal support. Wife's second assignment of error is sustained.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN CONSIDERING FACTS OUTSIDE OF THE RECORD AND IN PERMITTING TESTIMONY OVER OBJECTION ABOUT POLICE REPORTS AND A DISMISSED CIVIL PROTECTION ORDER REQUEST AND FURTHER ERRED BY RELYING ON THIS INADMISSIBLE EVIDENCE AS A BASIS FOR REJECTING CONNECTION WITH HIS DECISION TO REJECT THE AGREEMENT OF THE PARTIES THAT SHARED PARENTING WAS APPROPRIATE." [SIC]
 {¶ 31} In his first assignment of error, Husband contends that the trial court erred in relying on inadmissible evidence as a basis for rejecting a shared parenting plan and designating Wife as the residential parent. Specifically, Husband contends that the trial court erred in considering (1) facts outside the record and (2) testimony regarding the parties' involvement with the police.
 {¶ 32} A trial court is vested with broad discretion to decide matters regarding the allocation of parental rights and responsibilities for the care of minor children. Donovan v.Donovan (1996), 110 Ohio App.3d 615, 618. Therefore, a trial court's decision regarding child custody is subject to reversal only upon a showing of an abuse of discretion. Id.; Miller v.Miller (1988), 37 Ohio St.3d 71, 74 (stating that the abuse of discretion standard applies to child custody cases). This is so because a trial court must have the discretion to do what is equitable based upon the particular facts and circumstances of each case. Booth v. Booth (1989), 44 Ohio St.3d 142, 144, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
Shared Parenting Plan
 {¶ 33} Husband essentially argues that the trial court erred in rejecting the parties' shared parenting agreement and instead awarding him continuous parenting time. Husband's argument is premised on an alleged agreed shared parenting plan. However, the record reflects that Husband submitted a revised proposed
shared parenting plan on November 23, 2004. While Wife testified that she approved portions of this plan, there is no evidence in the record that Wife acquiesced to this plan.
Facts Outside the Record
 {¶ 34} Pursuant to R.C. 3109.04(C), in any action pertaining to the allocation of parental rights and responsibilities,
"Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent and may order the parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the investigation and examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request. The report shall be signed by the investigator, and the investigator shall be subject to cross-examination by either parent concerning the contents of the report. * * *"
 {¶ 35} Here, the trial court referred the matter to Family Court Services for an evaluation and later appointed a guardian ad litem. Summit Co. D.R. Loc. R. 22.02 governs the report and recommendation of the Family Court Services Representative and provides:
"When referred for an evaluation, the Family Court Services Evaluator will produce a report which may include a summary of the collateral information received, a summary of each parent's concerns and strengths and a recommendation as to the allocation of parental rights and responsibilities."
Summit Co. D.R. Loc. R. 26.04 provides the responsibilities of guardian ad litems and states in part:
"Guardian ad litem reports will be in the Family Court Services file. It is expected that the guardian ad litem will attend all Court hearings, as required and/or have a report available. * * *"
 {¶ 36} Both the guardian ad litem, Michelle Edwards, and the Family Court Services' representative, Susanne Davis, testified and submitted written reports to the trial court. The trial court reviewed these documents in reaching its decision regarding the parenting arrangement for the children. Ms. Edwards testified that shared parenting was not in the children's best interest because of the conflict between the parents. Ms. Davis recommended that the children should be placed in Wife's custody and that Husband should have continuous visitation. She also testified that she did not believe a shared parenting plan would be feasible, either "realistically or practically" in light of the parents' communication problems. She felt that the parties could not effectively implement such a plan because they currently disagreed over many decisions and a plan that increased their responsibility to communicate would create more controversy. She elaborated on this opinion, explaining that she anticipated that such a plan would cause major disagreements between the parents regarding school and medical issues. She felt that these disagreements would ultimately have a negative impact on the children. Both Ms. Edwards and Ms. Davis recommended that Wife be the residential parent and legal custodian and that Husband receive standard parenting time.
 {¶ 37} In this case, the record indicates that the trial court reviewed the factors set forth in R.C. 3109.04(F)(1)/(2), the parties' respective motions, the testimony presented at trial, the exhibits presented at trial and Ms. Edwards' and Ms. Davis' reports. Based upon this evidence, the trial court found that granting legal custody in favor of Wife was in the best interest of the children. We note that the record on appeal is incomplete; specifically, Husband has failed to include Ms. Edwards' and Ms. Davis' reports, as required by App.R. 9 and Summit Co. D.R. Loc. R. 22.03. Summit Co. D.R. Loc. R. 22.03 states that the Family Court Services file will not be transmitted on appeal except as requested by one of the parties or the trial court, and provides:
"(B) Upon the request of either party or order of the Court, the documents and exhibits contained within this file shall be considered as part of the `original papers and exhibits filed with the trial Court' for purposes of Appellate Rule 9(A)."
 {¶ 38} An appellant bears the burden of ensuring that the record necessary to determine the appeal is filed with the appellate court. App.R. 9(B). See State v. Williams (1995),73 Ohio St.3d 153, 160. Here, Husband does not claim that he was not informed of the filing of either report nor does he claim that he requested that the reports be transmitted on appeal. Pursuant to App.R. 12(A)(1)(b), this Court is limited to determining the appeal on the record as provided in App.R. 9. If the record is incomplete, the reviewing court must presume the regularity of the trial court's proceedings and affirm its decision. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. See, also,Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 409 (declaring where portions of the record are omitted, which are necessary for effective review, the appellate court must affirm).
 {¶ 39} Husband first argues that the trial court erroneously stated that it relied upon testimony of Jeff Durr, who was Husband's counselor and who had assisted the parties in attempting to mediate a shared parenting plan, in reaching its decision. Husband additionally contends that there are no facts in the record to support the finding that Ms. Edwards and Ms. Davis revised their opinions during the course of the court proceedings to be more supportive of the shared parenting plan. He further argues that there are no facts to support the court's finding that criminal charges brought against Wife were resolved.
 {¶ 40} The trial court based its finding, in part, on Ms. Edwards' and Ms. Davis' reports. In the absence of the complete record, we cannot say that the trial court's findings of fact are unsupported by evidence in the record. Therefore, while we find that Mr. Durr did not testify at trial, we are unable to determine where the trial court obtained this information. Had Ms. Edwards' and Ms. Davis' reports been made a part of the record before us, we could determine whether Ms. Davis or Ms. Edwards interviewed him and included this in her report.[3]
As these reports are necessary for a determination of appellant's assignments of error, this Court must presume regularity in the trial court's proceedings and affirm the judgment of the trial court. See Knapp, 61 Ohio St.2d at 199; Wozniak,90 Ohio App.3d at 409.
Police Report and Civil Protection Order
 {¶ 41} Husband additionally contends that the trial court erred in permitting testimony regarding the filing of police reports by the Bath Police and civil protection orders ("CPO") by Wife. Husband contends that the fact that a filing has been made without a hearing or disposition is neither admissible nor probative. He argues that the trial court erred in considering these filings as evidence.
 {¶ 42} Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A trial court has broad discretion in determining whether to admit or exclude evidence, and this Court will not reverse an evidentiary ruling unless the trial court has abused its discretion and a party has suffered material prejudice thereby. Weiner, Orkin, Abbate Suit Co.,L.P.A. v. Nutter (1992), 84 Ohio App.3d 582, 589. This court must limit its review of the trial court's admission of evidence to whether or not the trial court abused its discretion. Rigbyv. Lake Cty. (1991), 58 Ohio St.3d 269, 271.
 {¶ 43} Here, the trial court permitted Ms. Davis to testify, over Husband's objection, regarding the twelve police reports filed by the Bath Police against Husband since 1998. She testified that not all of these police reports were domestic disputes and proceeded to explain the substance of some of the complaints. She also testified that Wife had obtained two civil protection orders against Husband.
 {¶ 44} Husband cites State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, for the proposition that police reports are inadmissible hearsay. This case is distinguishable on two grounds. First, the within matter involves a civil matter whileLeonard involved a criminal matter. Secondly, no police reports were introduced herein. Moreover, although the court noted in its findings of fact that Wife filed domestic violence petitions against Husband and that the police were called out to the marital residence on twelve occasions, the conclusions of law reflect that the court relied on several factors in rejecting the shared parenting plan. In its conclusions of law, the court was persuaded by Ms. Edwards' recommendation that shared parenting would not work and by evidence that Wife had been the primary caregiver for the children. The court additionally recognized that neither party had been convicted of or pled guilty to any criminal case of endangering a child. This conclusion reflects the court's concern over the children's best interest and further demonstrates that the court was not heavily relying on the police reports or the civil protection orders in reaching this decision. Consequently, we find that even if the trial court erred in admitting this evidence, Husband was not prejudiced thereby.
Genetic Testing
 {¶ 45} Husband also contends that the trial court erred in punishing him for requesting genetic testing of the children to determine parentage. He argues that he was simply asserting his right to know their parentage with certainty.
 {¶ 46} The trial court has broad discretion in allocating parental rights and responsibilities. Donovan,110 Ohio App.3d at 618. Consequently, the trial court was free to consider all evidence presented including Husband's request for genetic testing. Husband has cited no authority for his contention that the trial court erred in considering this evidence. Moreover, even if the trial court erred in considering this evidence, the record reflects that the trial court did not rely heavily upon this factor in reaching its custody decision. The record demonstrates that the court was heavily persuaded by Ms. Edwards' recommendation that shared parenting would not work and by evidence that Wife had been the primary caregiver for the children. We therefore find no abuse of discretion in the court's consideration of this evidence. Husband's first assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR II
"THE TRIAL COURT'S FINDINGS THAT WIFE IS MORE LIKELY TO FACILITATE HUSBAND'S PARENTING TIME AND THAT HUSBAND HAS FAILED TO PAY CHILD SUPPORT AS ORDERED ARE NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD."
 {¶ 47} In his second assignment of error, Husband contends that the trial court's finding that Wife is more likely to facilitate Husband's parenting time and that Husband failed to pay child support as ordered was not supported by the record. We find no merit in this contention.
 {¶ 48} Husband contends that, in contrast to the trial court's findings, the record reflects that Wife is the one that has cancelled parenting times and originally wanted to move the children out of the State. Husband argues that this evidence demonstrates that Wife is less likely than he to facilitate parenting time. However, the record reflects that the trial court was persuaded by evidence that "when an Emergency Ex Parte
Order was signed granting Husband's parents temporary possession of the children, Husband threatened to have the police go to the school to make sure that Wife had no contact with the children." We find that such evidence supports a finding that Husband had a propensity to cause conflicts with regard to parenting times. As the trial court's finding was supported by facts in the record, we find no merit in Husband's contention that the trial court's finding was unsupported by the record.
 {¶ 49} Husband also argues that there is no evidence in the record that Husband failed to pay child support as ordered. While we acknowledge that the parties stipulated that Husband was current with his child support payments as of the first day of trial, there was also evidence presented that Husband had failed to timely make payments on several occasions. Wife testified that Husband had paid his support as much as a month late, which caused her to fall behind in her monthly obligations. Although Husband may have been current by the time of trial, this does not mean that Husband had made timely payments before trial. We, therefore, find no merit in this contention. Husband's second assignment of error is overruled.
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN ITS VALUATION OF THE MARITAL EQUITY IN THE HUSBAND'S PREMARITAL BUSINESS, SALUPPO LANDSCAPING."
 {¶ 50} In his third assignment of error, Husband argues that the trial court erred in its valuation of the marital equity in his business, Saluppo Landscaping. Appellant's argument is two-fold. First, he contends that the trial court erred in deducting the same debt twice in its calculations and thereby overstating the marital equity in the business. Secondly, he argues that the trial court erred in finding that the value of Husband's business as of December 31, 2002 was $167,914.00.
Business Debt
 {¶ 51} Appellant first contends that the trial court erred in deducting the same debt twice in its calculations thereby overstating the marital equity in his business. We agree.
 {¶ 52} The valuation of assets is for the trier of fact.Hirt v. Hirt, 9th Dist. No. 03CA0110-M, 2004-Ohio-4318, at ¶ 16; Martinez v. Martinez (Sept. 16, 1987), 9th Dist. No. 2256, at *2. We have previously held that a trial court is not required to choose one particular method of valuation over another in valuing marital assets. Focke v. Focke (1992),83 Ohio App.3d 552, 556. Upon review, we must determine whether, based on all the facts and circumstances before it, the court abused its discretion in arriving at the value determined. Id.
 {¶ 53} The trial court found that at the time of the parties' marriage in 1994 Saluppo Landscaping had a net equity of $82,278.00. The trial court reached this figure by subtracting the debt ($52,698.00) from the assets ($134,976.00). The parties stipulated that the fair market value of the business as of December 2001 was $167,914.00. The trial court then determined the marital portion of the equity in the business by subtracting Husband's net equity in the business as of 1994 and then adding the business' debt as of 1994 ($52,698.00). The court stated that it added this $52,698.00 because this amount had been repaid during the period of the marriage. The trial court failed to recognize that this amount was already accounted for because it had been considered in determining the net equity of the business as of 1994. We agree with Appellant and find that the trial court erred in deducting this $52,698.00 twice. In doing so, the trial court overstated the marital equity in the business by $52,698.00.
Valuation of Business
 {¶ 54} Appellant next contends that the trial court erred in relying on Wife's expert instead of his expert in determining the value of Husband's business. Husband contends that the main difference between the parties' experts' valuations is that Wife's expert, Robert Schlabig, adjusted the total equipment value from the Net Book Value of $53,232.00 to $233,049.00, whereas Husband's expert, Lou Maglione, adjusted the total equipment value from $53,232.00 to $157,878.00. Husband contends that the trial court erred in not giving credence to Mr. Maglione's valuation of the business — which was largely based on Husband's testimony. Husband argues that he is qualified to express an opinion of value as the owner of the business.
 {¶ 55} "It is well established that the trier of fact is to determine the weight to be given to expert testimony." Jensen v.Jensen (Mar. 8, 1995), 9th Dist. No. 94CA005808, at *2, citing,Vetter v. Hampton (1978), 54 Ohio St.2d 227, 230. The trial court was particularly concerned with Mr. Maglione's testimony that the business was worth $103,452.00 in 1994 and was worth only $102,725.00 as of December 31, 2002. Mr. Maglione testified that an asset approach to valuation was the most relevant for Husband's business. However, as Wife's expert pointed out, the asset approach did not take into consideration (1) the increase in gross sales from $189,343.00 (1994) to $273,936.00 (2002), or (2) the increase in equity of the assets from $82,343.00 (1994) to $98,424.00 (2002) or (3) the increase in net earnings from $34,857.00 (1994) to $46,447.00 (2002). Mr. Maglione opined that the value of the business had actually declined slightly from 1994 to 2002.
 {¶ 56} Upon review, we find no error in the trial court's decision to believe Wife's expert over Husband's. In turn, we find no error in the trial court's decision not to believe Husband's testimony. Even if Husband was qualified to express an opinion as to the value of the business, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In light of the increase in equity, assets, gross sales and profits, we find that it was unreasonable to believe Mr. Maglione and Husband's testimony that there had been no increase in the value of the company during the marriage.
 {¶ 57} In reaching its determination, the trial court reviewed the testimony of both experts and the exhibits including (1) the tax returns, (2) financial statements and (3) an adjusted balance sheet for the business as of December 31, 2002. Consequently, we find that the trial court's decision is supported by competent, credible evidence and that the trial court did not err in its valuation of Husband's business.
 {¶ 58} In sum, we find (1) the trial court erred in deducting the $52,698.00 twice in its calculations of the marital equity in the business and (2) no error in the trial court's decision to rely on Wife's expert in determining the value of the business as of December 31, 2002.
 {¶ 59} Husband's third assignment of error is sustained in part and overruled in part.
 III. {¶ 60} Wife's first and second assignments of error are sustained. Husband's first and second assignments of error are overruled and his third assignment of error is sustained in part and overruled in part. The judgment of the Summit County Domestic Relations Court is affirmed in part and reversed in part.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Whitmore, P.J. Carr, J. Concur.
[1] The trial court determined that Wife owed Husband $2,931.43 after reconciling the parties' payments under the temporary orders. Under these orders, Husband was required to pay Wife child support of $1,284.80 per month and spousal support of $2,000.00 per month. Per the Child Support Enforcement Agency records, there was an arrearage of $3,350.00 as of October 2004. However, Husband had paid $880.00 in preschool expenses and $8,401.51 on the first mortgage which were Wife's responsibilities. But, Wife had paid $2,999.58 for auto repairs which were Husband's responsibilities. Wife, therefore, owed Husband $2,931.43 per the temporary orders.
[2] This amount does not account for the $2,931.43 Wife owed Husband under the temporary orders.
[3] Appellate courts in Ohio have held that trial courts may consider the report of a court-appointed investigator despite the hearsay inherent in the report. See Webb v. Lane (Mar. 15, 2000), 4th Dist. No. 99CA12, at *3. As long as the investigator is made available for cross examination, the parties' due process rights are protected, and a court may consider the report, even without oral testimony by the investigator, and despite any hearsay that may be contained in the report. Id. In this case, the representative from Family Court Services and the guardian ad litem both testified at the hearing and were subject to cross examination by opposing counsel. Therefore, if Mr. Durr's statements were included in one of these reports, the trial court could consider such statements despite the fact that the statements are hearsay.