{¶ 39} I agree that Mrs. Wohleber's first assignment of error should be sustained, but would do so based on the trial court's failure to adequately explain how it reached its conclusion that the money withdrawn from the T-Bill account by Mrs. Wohleber and the money remaining in that account at the time of the divorce decree was Mr. Wohleber's separate property. Inasmuch as the trial judge who originally heard this case is no longer on the bench, I would instruct the current trial judge to hold a hearing regarding the T-Bill account and enter an order detailing whether the funds withdrawn by Mrs. Wohleber and the funds remaining in the account were Mr. Wohleber's separate property or marital property and why.
 {¶ 40} I concur in the overruling of Mrs. Wohleber's second assignment of error, but note that the parties no longer had an interest in the Lear Nagle property at the time of the divorce, the proceeds of its sale having been invested in the Wellington property. Apparently, the trial court found that Mr. Wohleber's mother had an equitable interest in the Lear Nagle property to help explain why she ended up with a 50% interest in the Wellington property. I concur in the majority's overruling of Mrs. Wohleber's third assignment of error regarding the Wellington property.
 {¶ 41} I concur in the majority's sustaining of that part of Mrs. Wohleber's fourth assignment of error regarding whether 500 of the options to buy Ford Motor Company stock were her separate property. I dissent, however, from its overruling of the remainder of that assignment of error, dealing with the value of the remaining 350 stock options. *Page 19 
 {¶ 42} To begin with, I do not understand why the majority switched to an abuse of discretion standard of review for this issue. In paragraph 7 of its opinion, it wrote that "[t]he characterization of property as either marital or separate is a factual inquiry, and we review such characterization under a manifest weight of the evidence standard." (quoting Morris v. Morris, 9th Dist. No. 22778, 2006-Ohio-1560, at ¶ 23) In regard to valuing the stock options, however, it has written at paragraph 27 that "[t]he valuation of any stock interests, however, is a factual matter subject to a court's discretion." (citing Saluppo v.Saluppo, 9th Dist. No. 22680, 2006-Ohio-2694, at ¶ 52.) It is unclear why some factual findings would be reviewed using a weight of the evidence standard and others using an abuse of discretion standard. Factual determinations should be reviewed to determine whether they are supported by sufficient evidence or are against the manifest weight of the evidence. Of course, I acknowledge that, since State v. Wilson,113 Ohio St. 3d 382, 2007-Ohio-2202, this may be redundant. SeeHuntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, ¶ 17-75 (Dickinson, J., concurring).
 {¶ 43} There was no evidence in this case to support a finding that the stock options were worth $6.79 each. In fact, the trial court did not make such a finding. It thought it was valuing stock: "The Defendant, Jennifer J. Wohleber, further has 850 shares of Ford stock, acquired on March 15, 2002. The value of the stock at trial was $6.79 per share. . . ." Even if it is assumed that the trial court knew the difference between stock options and stock and that its use of the term stock to refer to stock options was a typographical error, it does not take an expert to recognize that options to buy shares of stock for $16.91 each are worthless when the stock is selling at $6.79. Today, February 19, 2009, the stock is selling for $1.62, so, if it were possible, the options would be even more worthless. We can all hope that the stimulus plan will turn Ford around and the options will eventually have some value. In the meantime, the trial court should *Page 20 
be directed to distribute the 350 options that are marital property in kind, 175 to Mr. Wohleber and 175 to Mrs. Wohleber.
 {¶ 44} I concur in the majority's overruling of Mr. Wohleber's assignment of error. *Page 1