DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Rashid Najmi, appeals the judgment entry of divorce by the Lorain County Court of Common Pleas Domestic Relations Division. We affirm.
 {¶ 2} Rashid Najmi ("Father") and Appellee, Theresa Najmi ("Mother"), were married on March 12, 1988. They have one child, N.N., born April 10, 2002. On November 23, 2005, Mother filed a complaint for divorce and Father answered her complaint. Both parties sought sole custody of N.N. Temporary orders were held in abeyance because the parties were still residing together. On January 25, 2006, Father filed a motion to maintain the residence of N.N. in Lorain County during the pendency of the proceedings. After a status conference on August 21, 2006, the trial court granted Father's motion on August 22, 2006, and ordered that N.N. be returned to Lorain County. On December 11, 2006, Mother filed a motion for "emergency ex parte orders" seeking exclusive use of the marital residence and restraining Father from discussing divorce proceedings in the presence of N.N. Mother's affidavit was attached to her *Page 2 
motion. The magistrate granted Mother's motion on the same day and ordered Father to vacate the marital residence. The trial court adopted the magistrate's order on December 19, 2006. Father complied with the court's order. Mother filed numerous other motions with the trial court seeking relief from Father's conduct, including a motion to show cause why Father should not be held in contempt for failing to comply with previous orders of the court.
 {¶ 3} Trial commenced on December 4, 2006, and lasted three non-consecutive days. During the trial, the trial court appointed a guardian ad litem to represent the interests of N.N. On October 29, 2007, the trial court issued its judgment entry granting divorce to Mother and ordering, among other things that Mother have sole custody of N.N. By judgment entry of November 16, 2007, the trial court ordered that all pending motions were made moot by the October 29, 2007 judgment entry of divorce. Father timely appealed the October 29, 2007 judgment entry and raises four assignments of error.
 Assignment of Error I "The trial court erred in designating Mother residential parent and permitting her to relocate with the minor child."
 Assignment of Error II "The trial court erred in its decision granting [Father] the standard order of visitation."
 {¶ 4} For ease of disposition, we will discuss Father's first two assignments of error together. In his first assignment of error, Father argues that the trial court abused its discretion in designating Mother residential parent of N.N. and allowing her to relocate to Coldwater, Ohio. Father maintains that the trial court improperly considered the factors set forth in R.C. 3109.04 to determine the best interest of N.N. In his second assignment of error, Father asserts that the trial court abused its discretion in ordering a modified version of the standard order of visitation. *Page 3 
Father maintains that the order is not in the best interest of N.N. because it will not allow him to pray at the Mosque every Friday and does not allow for the twelve major floating Muslim holidays that require "compulsory fasting and compulsory prayers."
 {¶ 5} Specifically, Father argues that the trial court erred: (1) in its consideration of the guardian ad litem's report vis-à-vis R.C. 3109.04(F)(1)(b), because Mother would not be able to promote respect for the Muslim culture in Coldwater, Ohio; (2) in its consideration of R.C. 3109.04(F)(1)(c) when it did not give weight to Father and N.N.'s religious family; (3) in its consideration of R.C. 3109.04(F)(1)(c) when it gave weight to the fact that Father was not employed without consideration for the fact that the parties agreed Father would remain unemployed and provide the primary care to N.N.; (4) in its consideration of R.C. 3109.04(F)(1)(d) when it gave weight to the magistrate's determination of Mother's motion for emergency ex parte relief and ordered Father to leave the marital residence; (5) when it considered Father's attitude during trial as affecting his credibility; and (6) in giving weight to the testimony and report of Ofelia Sigalove, a clinical counselor, that N.N. "is in danger of psychological and emotional damage due to [Father's] inappropriate display of behavior[.]" We disagree.
 {¶ 6} We review a trial court's judgment as to the allocation of parental rights to determine if "there is relevant, competent and credible evidence upon which the fact finder, [the trial court,] could base its judgment." Wachter v. Wachter, 9th Dist. No. 23170,2006-Ohio-6970, at ¶ 19, quoting Brewer v. Brewer, 5th Dist. No. 2003CA00087, 2004-Ohio-3531, at ¶ 15. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Bechtol v. Bechtol (1990),49 Ohio St.3d 21, syllabus. *Page 4 
 {¶ 7} To determine a child's best interest, the trial court must look to the non-exclusive factors outlined in R.C. 3109.04(F)(1):
 "(a) The wishes of the child's parents regarding the child's care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense * * * [;]
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 8} In the entry of divorce decree, the trial court stated that it considered the relevant statutory factors in naming Mother as residential parent for school purposes. Specifically, the trial court found certain sub-paragraphs to be particularly relevant and specifically noted others not to be relevant given the facts before it.
 {¶ 9} The trial court considered sub-paragraph (b), the child's wishes, to be the first relevant consideration. The trial court relied upon the report of the guardian ad litem to *Page 5 
determine N.N.'s wishes since neither party requested an in-camera interview. The guardian ad litem's report, as quoted in the Judgment Entry, recommended that Mother be the residential parent and noted that for this recommendation to be in the best interest of N.N., N.N. must "have frequent, open and unfettered parenting time with his father in the Lorain County * * * area." The guardian ad litem's report, quoted in the judgment entry, acknowledged N.N.'s involvement "with his father's activities and religion at the Mosque" and recommended that N.N. "be with his father on Father's Day and for major Muslin [sic] holidays/days of major religious significance[.]" The guardian ad litem also recommended that, "to the extent educationally possible, [N.N.] should spend the Eid holidays and other major Muslin [sic] days of religious significance and holidays with his Father."
 {¶ 10} Father does not object to the trial court's reliance upon the guardian ad litem's report by arguing that the trial court was not permitted to rely upon it and/or that the report does not represent N.N.'s wishes in the view of the guardian ad litem. Father's objection is to the recommendations of the guardian ad litem, vis-à-vis his ability to maintain N.N.'s Muslim culture. Specifically, Father asserts that, "it is incredible to believe that [Mother] would be willing to comply with the recommendations of the Guardian Ad Litem" because Mother has not assured the court she would "promote respect for the Muslim and Pakistani culture" and there is no "evidence to suggest a Muslim community exists anywhere near Coldwater." Moreover, Father asserts, the guardian ad litem's report demonstrates "complete ignorance of the Muslim way of life, and the demands that the religion places on a Muslim."
 {¶ 11} We initially note that the guardian ad litem's report is not part of the record before us. As we stated in Saluppo v. Saluppo, 9th Dist. No. 22680, 2006-Ohio-2694, at ¶ 38, "[a]n appellant bears the burden of ensuring that the record necessary to determine the appeal is filed *Page 6 
with the appellate court." Id., citing App. R. 9(B). Here, the guardian ad litem's report is not part of the record on appeal. "Pursuant to App. R. 12(A)(1)(b), this Court is limited to determining the appeal on the record as provided in App. R. 9. If the record is incomplete, the reviewing court must presume the regularity of the trial court's proceedings and affirm its decision." Saluppo at ¶ 38, citing Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. In the absence of the guardian ad litem's report, "we cannot say that the trial court's findings of fact are unsupported by evidence in the record."Saluppo at ¶ 40. As these reports are necessary for a determination of this portion of Father's assignment of error, "this Court must presume regularity in the trial court's proceedings[.]" Id. See, also,Knapp, 61 Ohio St.2d at 199.
 {¶ 12} We note, however, that a portion of the guardian ad litem's report is quoted in both the judgment entry and Father's appellate brief. The quoted portion of the report reflects thoughtful consideration of Father's religious beliefs and attempts, to the greatest degree possible, to make recommendations that would promote N.N.'s Muslim culture. The Supreme Court of Ohio has addressed the trial court's right to consider religious beliefs of a parent in child custody cases, holding:
 "A domestic relations court may consider the religious practices of the parents in order to protect the best interests of a child. Birch v. Birch (1984), 11 Ohio St.3d 85, 11 OBR 327, 463
N.E.2d 1254. However, the United States Constitution flatly prohibits a trial court from ever evaluating the merits of religious doctrine or defining the contents of that doctrine. Thomas v. Review Bd. of Ind. Emp. Sec. Div.
(1981), 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624. Furthermore, custody may not be denied to a parent solely because she will not encourage her child to salute the flag, celebrate holidays, or participate in extracurricular activities." Pater v. Pater (1992), 63 Ohio St.3d 393, 395.
If the trial court were to completely comply with Father's wishes, it would be denying Mother custody based on her Christian beliefs. Instead, the trial court considered all of the relevant *Page 7 
statutory factors and issued a judgment entry that represents a compromise, as recommended by the person engaged to speak for N.N., to be in the best interest of N.N.
 {¶ 13} The trial court considered sub-paragraph (c), N.N.'s interaction and interrelationship with his parents and other persons. The court noted that Mother "has been employed full time since 1989 by Medical Mutual of Ohio" and "provides the sole financial support" for the family. Testimony at trial was that Mother could only maintain her employment if she transitioned to the Toledo office and living in Coldwater, Ohio would allow her to do so. The judgment entry stated that Father has a "Doctor of Medicine Degree" but has not been employed throughout the duration of the marriage and "chooses to remain unemployed." The judgment entry contained portions of the trial transcript related to each of Father's and Mother's daily routine with regard to N.N., which reflected that Mother is the predominate caregiver for N.N. despite the fact that she was otherwise employed. The judgment entry then noted that neither party had family in Lorain, most of Father's family lives in New Jersey, and Mother's "entire extended family" resides in the Coldwater, Ohio area. The trial court also noted that N.N. has spent every birthday in Coldwater.
 {¶ 14} We disagree with Father's contention that the trial court did not consider Father's and N.N.'s religious family as the judgment entry specifically acknowledges Father's relationship with his Mosque. We further disagree with Father that the trial court "discounted the fact that it was an apparent agreement between the parties that he provide the primary care for the minor child, at least from the period they adopted" N.N. The judgment entry simply states that Father chose not to work for the duration of the parties' 20 year marriage. That the trial court did not specifically note an "apparent agreement" between the parties that Father stay at home to care for N.N. since 2001, is not inconsistent with the judgment entry. Mother *Page 8 
testified that the parties did not make such agreement. The trial court's conclusions related to N.N.'s interaction with his parents and others are supported by the record.
 {¶ 15} The trial court then considered sub-paragraph (d), i.e., the child's adjustment to his home, school, and community and noted that N.N. had few friends in Lorain, Ohio, and was doing well in Kindergarten, but that his education providers, as reflected in the guardian ad litem's report, "shared some degree of concern about the apparent stress laden interactions between [N.N.'s] parents." The judgment entry also demonstrated the trial court's concern with Father's "interaction" with N.N. and Mother, which precipitated Mother's motion and the trial court's entry ordering Father from the marital home. A review of Mother's motion and supporting affidavit provides a basis for the trial court's concern.
 {¶ 16} The judgment entry also considered two "other" factors under R.C. 3109.051(D)(16). The trial court considered the credibility of the parties and found Mother to be a credible witness based on her open and honest answers to all questions. The trial court found Father to be a "difficult witness" and noted that his attitude and tone, in addition to the substance of his testimony, "caused the court great concern regarding his credibility."
 {¶ 17} Father objects to the trial court's consideration of his attitude and the facts surrounding the granting of Mother's ex parte motion vis-à-vis his credibility. Father's objections have no merit. It is well-established that in determining the best interest of a child, "[t]he evaluation of evidence and the credibility of witnesses is primarily for the trier of fact." Scarbrough v. Scarbrough (Jul. 18, 2001), 9th Dist. No. 00CA007743, at *1. As we stated in Madison v.Jameson (Jul. 9, 1997), 9th Dist. No. 18013, at *6:
 "Where the determination of the case hinges on issues of credibility, the reviewing court must defer to the trier of fact. Absent extreme circumstances, an appellate court will not second guess determinations of weight and credibility. *Page 9 
 * * * [W]e find no indication the court failed to consider those factors enumerated in R.C. 3109.04(F)(1)." (Internal citations omitted.)
Moreover, our review of the trial transcript supports the trial court's determination that Father was a difficult witness.
 {¶ 18} Finally, the court considered the report of Ofelia Sigalove, M.A., a clinical counselor who had several meetings with N.N. and Mother and one meeting with Father. The trial court noted that the Father refused to attend any other meetings with Ms. Sigalove. The judgment entry quotes relevant parts of Ms. Sigalove's testimony and report. The trial court took note of Ms. Sigalove's conclusion that, based on her meetings, she believed that N.N. "is in danger of psychological and emotional damage due to Father's inappropriate display of behavior[.]"
 {¶ 19} Father objects to any weight the trial court gave to Ms. Sigalove's testimony because Ms. Sigalove is not a licensed psychologist or psychiatrist and was not qualified as an expert. Father maintains that since Ms. Sigalove only met with him for 30 minutes, her opinion demonstrates an obvious bias against him. Father did not object to the admission of Mrs. Sigalove's report and has therefore, "forfeited his ability to raise this issue on appeal due to his failure to preserve the issue by objecting to the admission of such evidence at trial."Walker v. Summa Health Sys., 9th Dist. No. 23727, 2008-Ohio-1465, at ¶ 107. Moreover, as discussed above, issues of credibility are primarily for the trier of fact. See Scarbrough at *1. The references to Mrs. Sigalove's report in the judgment entry are accurate and its content supports the trial court's decision.
 {¶ 20} Based on our review of the record, it is clear that there is relevant, competent and credible evidence upon which the trial court could have based its judgment. See, Wachter at ¶ 9. We acknowledge that there might be logistical challenges related to Father's desire to ensure that *Page 10 
N.N. maintains his Muslim culture. However, the judgment entry and modified visitation order reflects thoughtful consideration of this issue. As noted above, it would be impossible to fully comply with Father's desires with anything less than full custody to Father, which the trial court found would not be in the best interest of N.N. The allocation of parental rights and modified standard visitation order reflects a plan that the guardian ad litem and trial court found to be in the best interest of N.N.
 {¶ 21} Father's first and second assignments of error are overruled.
 Assignment of Error III "The trial court erred in its determination that [Father] engaged in financial misconduct sufficient to justify a distributive award to [Mother]."
 {¶ 22} Father asserts that the trial court abused its discretion in making an unequal distributive award to Mother after finding that Father engaged in financial misconduct. We disagree.
 {¶ 23} Our review of a trial court's division of marital property is whether the trial court abused its discretion in dividing the property, under the totality of circumstances. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Vujovic v. Vujovic, 9th Dist. No. 04CA0083-M,2005-Ohio-3942, at ¶ 34. In Downey v. Downey, 9th Dist. No. 23687,2007-Ohio-6294, we discussed the requirements of R.C. 3105.051 and held:
 "Pursuant to R.C. 3105.171, the trial court is to divide marital property in an equitable manner. In fashioning an equitable property division, a trial court typically starts from the premise that marital property should be equally divided between the parties, with each spouse receiving his or her own separate property. R.C. 3105.171(C), (D). However, in certain circumstances, an unequal distribution of marital property is warranted. R.C. 3109.171(E)(3), for example, states:
 "`If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a *Page 11 
greater award of marital property.'" Downey at ¶ 16, quoting R.C. 3109.171(E)(3).
The term "financial misconduct" "`implies some type of wrongdoing such as interference with the other spouse's property rights.'" Bucalo v.Bucalo, 9th Dist. No. 05CA0011-M, 2005-Ohio-6319, at ¶ 23, quotingKita v. Kita (Nov. 24, 1999), 9th Dist. No. 19256. "The burden of proving financial misconduct is on the complaining party."Bucalo at ¶ 23, citing Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, at ¶ 43.
 {¶ 24} Here, the trial court found that Father had written two checks from the parties' home equity line of credit without Mother's knowledge. Father asserted that the checks were written to pay Father's credit card bill for marital debt ($7,773.00, payable to AAA Financial Services) and the medical expenses of a child that the parties wanted to adopt from Pakistan ($10,000.00, payable to cash). Both checks were written before the divorce complaint was filed, January 21, 2003, and November 7, 2005, respectively. The two checks "exceeded the remaining equity in the marital residence, and, in fact, placed it in a deficit situation." The trial court then awarded Mother "the entire interest" in both of her retirement plans (valued at $12,675.00) based on the fact that Father "committed financial misconduct[.]" Father is only appealing the distribution of the pensions to Mother and no other distributive award.
 {¶ 25} With regard to the $10,000 check payable to cash allegedly for medical expenses, the trial court discounted Father's explanation that he cashed the check and that the "money was then carried by personal friend, unknown to him, name unknown, to Pakistan for delivery to his sister to pay medical expenses of the minor child[.]" The trial court further noted that Mother "had no knowledge of the $10,000.00 draft." Evidence was also presented at trial that Father owned a bank account that was closed in June of 2006, with a $9,612.45 balance. Father testified that this money belonged to Father's brother. The documents and testimony at trial *Page 12 
support the trial court's factual findings, and we cannot say that the trial court abused its discretion when it determined that Father engaged in financial misconduct related to the "cash" check.
 {¶ 26} With regard to the AAA check, the trial court found that the "credit card was held solely in [Father's] name. [Mother] had no idea of the existence of the credit card nor had she used that credit card at any time." We have held that the time frame in which the alleged misconduct occurs is relevant to the issue of financial misconduct. See,Downey at ¶ 17. The AAA check was written nearly two years prior to the divorce complaint being filed. This Court has not directly addressed the situation where an unequal distribution was made based, in part, on financial misconduct that occurred long before the divorce action commenced. We, therefore, look to another court for guidance. The Seventh District Court of Appeals found that a trial court is within its discretion to find that financial misconduct occurred even "long before divorce proceedings were initiated" if the opposing party can establish that the other party had wrongful intent when the conduct occurred.Orwick v. Orwick, 7th Dist. No. 04 JE 14, 2005-Ohio-5055, at ¶ 28. TheOrwick court went on to state that "there are many forms of financial misconduct, and whether or not a party committed such misconduct is largely dependent on the specific facts of the case." Id. at ¶ 30. We find such facts existed in this case.
 {¶ 27} Testimony at trial was that Father controlled the family finances and gave Mother little to no access to financial information, despite the fact that she was sole financial provider to the family. The receipts and documents produced at trial did not support Father's claim that the funds acquired from AAA Financial Services were used to pay marital debt. Mother also testified that she learned in June of 2006, that several credit cards were opened in her name *Page 13 
without her knowledge; that approximately $9,000.00 was charged to those credit cards; and that one other credit card had been requested.
 {¶ 28} As noted above, the trial court has the discretion to compensate the offended spouse where there has been an incident of financial misconduct. Downey at ¶ 16. Based on the foregoing, we cannot say that the trial court abused its discretion in finding Father engaged in financial misconduct and distributing $12,675.00 in pension benefits to compensate Mother for said financial misconduct, which totaled $17,773.00.
 {¶ 29} Father's third assignment of error is overruled.
 Assignment of Error IV "The trial court erred in not removing the guardian ad litem."
 {¶ 30} Father finally argues that the trial court erred in appointment Mr. Smith as guardian ad litem because Mother's attorney was formerly employed by Mr. Smith's firm. Father did not object at trial to the appointment of Mr. Smith or move the court to have Mr. Smith removed. Although Father asserts in appellate briefing that he expressed his "concern with the guardian representing the child after learning that [Mother's] counsel was a former employee of the Guardian's firm," Father does not point us to any portion of the record that establishes such "concern," nor do we find his expression of concern in the record. Absent an objection to the trial court, Father has forfeited his right to raise this issue on appeal. Walker at ¶ 107.
 {¶ 31} Father's fourth assignment of error is overruled.
 {¶ 32} Each of Father's assignments of error is overruled and the judgment of the trial court is affirmed.
 Judgment Affirmed. *Page 14 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Carr, P. J. Whitmore, J. concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1