[Cite as *Havrilla v. Havrilla*, 2014-Ohio-2747.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| JULIA M. HAVRILLA | C.A. No. 27064 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRIAN K. HAVRILLA | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. 2011-08-2343 |

DECISION AND JOURNAL ENTRY

Dated: June 25, 2014

WHITMORE, Judge.

{¶1} Appellant, Julia Havrilla ("Wife"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I

{¶2} Brian Havrilla ("Husband") and Wife were married in 1993, and had two children from the marriage. In August 2011, Husband and Wife both filed for divorce. The court issued a temporary order, granting Wife the use of the martial residence and requiring her to pay the first mortgage. The court ordered Husband to pay child support and the second mortgage. During discovery, Wife hired a forensic accountant to determine if Husband had committed financial misconduct. Subsequently, Wife filed a motion for contempt, arguing that Husband had not provided a full financial accounting in compliance with a temporary order. The court

held Wife's motion in abeyance until trial. A trial was held on November 1, 2012, November 2, 2012, and April 24, 2013.

{¶3} In December 2012, Husband filed a motion for contempt because Wife had stopped paying the mortgage as required under the temporary orders. After a hearing in March 2013, the court found Wife in contempt. The court ordered Wife to reimburse Husband for mortgage payments he had made on her behalf and attorney's fees. The court sentenced Wife to 10 days in jail, but allowed Wife to purge the contempt if she paid the amount owed in full before September 9, 2013. Wife did not appeal this order.

{¶4} In July 2013, the court entered a final divorce decree. As part of the decree, the court ordered Wife to pay Husband $1,500 a month in spousal support and set Husband's child support payments at $0.[1] After the court denied her motion for a new trial, Wife filed a timely notice of appeal. Wife raises nine assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED AS A MATTER OF LAW IN VIOLATION OF R.C. 3105.16 TO THE PREJUDICE OF WIFE BY FAILING TO RESTORE WIFE'S NAME AS WIFE REQUESTED.

{¶5} In her first assignment of error, Wife argues that the court erred in failing to restore her to her maiden name. Husband concedes the error, and we agree.

{¶6} "When a divorce is granted the court of common pleas shall, if the person so desires, restore any name that the person had before the marriage." R.C. 3105.16. At trial, Wife

---

[1] After the notice of appeal was filed the trial court modified the parties' spousal and child support obligations. Wife's request to modify the support orders was not made pursuant to Civ.R. 75(H). Therefore, the court did not have jurisdiction to modify the support orders while the appeal was pending and that order is void. *See Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 146 (1994).

requested the court restore her to her maiden name. The divorce decree, however, is silent on the issue. In light of Wife's request and pursuant to R.C. 3105.16, the court was required to restore Wife to her maiden name. Wife's first assignment of error is, therefore, sustained.

## Assignment of Error Number Two

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF WIFE WHEN IT ORDERED, EX PARTE, IN CONTRAVENTION OF ITS OWN ORDER STAYING PROCEEDINGS, WITHOUT JURISDICTION, WITHOUT A MOTION, WITHOUT NOTICE TO WIFE AND WITHOUT A HEARING THAT THE MARTIAL HOME BE TRANSFERRED TO HUSBAND'S SOLE NAME.

{¶7} In her second assignment of error, Wife argues that the court erred in entering a post-decree order transferring her interest in the martial home to Husband.

{¶8} On July 18, 2013, the court issued a final divorce decree. As part of the decree, Wife was ordered to quitclaim the deed to the martial property within 30 days to Husband. The decree further provided that "[i]f either party fails to execute, transfer, or deliver any such documents to the other party, this Order may be presented to the county auditor, clerk of courts, county recorder, and any other public or private officials, in lieu of the document that is regularly required to convey or transfer the property."

{¶9} On July 25, 2013, Wife filed a motion for a new trial and requested the court stay any enforcement of the final decree. On August 1, 2013, the court granted Wife's motion to stay until it ruled on her motion for a new trial. On August 9, 2013, the court denied Wife's motion for a new trial and vacated its order staying the divorce decree. On September 5, 2013, Wife filed an appeal and a motion to stay, pending the resolution of the appeal. On September 27, 2013, the court granted Wife's motion "upon [Wife's] posting a supersedeas bond with the Clerk of Court in the amount of $35,834.46 within thirty (30) days * * *." On October 7, 2013, prior to Wife posting a bond, the court ordered the Summit County Fiscal Officer to transfer Wife's

interest in the martial property to Husband. Wife did not appeal this order, but instead filed a motion to vacate the transfer order. The court denied Wife's motion.

{¶10} Wife argues that the court erred in ordering the property to be transferred, in part, because a stay was in effect. Wife further argues that the court erred in entering an order transferring the property without providing her notice and an opportunity to respond. However, Wife has not appealed from this order; therefore, these arguments are not properly before us.

{¶11} Because Wife did not appeal from the order transferring her interest in the marital property, Wife's second assignment of error is overruled.

Assignment of Error Number Three

THE TRIAL COURT ERRED AS A MATTER OF FACT AND LAW TO THE PREJUDICE OF WIFE BY AWARDING SPOUSAL SUPPORT TO HUSBAND BASED ON ITS "RELEVANT AND DECISIVE" FINDING THAT WIFE CAUSED HUSBAND TO LOSE HIS JOB WHEN HUSBAND ADMITTED HE WAS TERMINATED FOR AN ALTOGETHER DIFFERENT AND INDEPENDENT, BOTH LEGALLY AND PRACTICALLY, CAUSE, NAMELY HUSBAND'S POOR JOB PERFORMANCE.

{¶12} In her third assignment of error, Wife argues that the court erred in awarding Husband spousal support based on the finding that Wife was responsible for Husband being fired. Specifically, Wife argues that the court's finding that she was involved in his termination is not supported by credible evidence.

{¶13} "While the decision to award support is discretionary, an appellate court reviews the factual findings to support that award under a manifest-weight-of-the-evidence standard." *Wallace v. Wallace*, 195 Ohio App.3d 314, 2011-Ohio-4487, ¶ 10 (9th Dist.). When reviewing the manifest weight of the evidence in civil matters:

The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a

> manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

*Zaccardelli v. Zaccardelli*, 9th Dist. Summit No. 26262, 2013-Ohio-1878, ¶ 7, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶14} Husband worked for Rockwell Automation ("Rockwell") for 18 and-a-half years. His last position was Global Account Team Leader. Husband testified that he was terminated from his employment in April 2013 after a "360 review." As part of the 360 review, Rockwell sent out letters to various co-workers and clients seeking feedback on his performance. According to Husband, he was fired for "performance reasons." Husband said the reasons given for his termination "were pretty vague," but included things like "bad feedback, [and] lack of sales." However, Husband also testified that he believed Wife had something to do with his termination.

{¶15} Husband stated that Wife had an affair with his boss at the time, Paul McRoberts. Husband testified that while McRoberts was not his boss when he was terminated, McRoberts was friends with that boss. According to Husband, McRoberts was talking to his boss and "trying to undermine [his] performance." Husband believed Wife was still romantically involved with McRoberts and said that McRoberts was applying for internal positions in Columbus, where Wife was now residing. Husband testified that he had received threats from both Wife and McRoberts that they were going to have him fired.

{¶16} Wife admitted to the affair with McRoberts and said that she had threatened to get Husband fired. However, Wife explained that she did so only out of anger. According to Wife, she did not act on her threat and did not have the ability to get him fired. Wife testified that she was still friends with McRoberts and kept in touch with him.

**{¶17}** The court found that "[a] relevant and decisive factor in this case is the role Wife played causing Husband to lose his job with Rockwell." The court further found that Wife did not offer any credible testimony to support her belief that Husband was fired for cause. In reaching its conclusion, the court noted that "[its] decision on this issue turns in-part on the parties' credibility."

**{¶18}** While Husband did testify that he was told that he was fired for "performance reasons," he also testified that he believed Wife had something to do with it because she was dating his former boss, who was friends with his most recent boss. Further, Husband testified that he had been repeatedly threatened by Wife and McRoberts that they were going to have him fired. This Court has repeatedly held that the trier of fact is in the best position to judge credibility of the witnesses. *See Nemeckay v. Upp*, 9th Dist. Summit No. 24874, 2010-Ohio-1966, ¶ 17.

**{¶19}** After reviewing the evidence, we cannot conclude that the court clearly lost its way and created a manifest miscarriage of justice in finding that Wife played some role in causing Husband to lose his job at Rockwell. Therefore, Wife's third assignment of error is overruled.

Assignment of Error Number Four

> THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE
> OF WIFE AND AGAINST THE BEST INTEREST OF THE PARTIES' MINOR
> CHILD WHEN [IT] OFFSET HUSBAND'S OBLIGATION TO PAY CHILD
> SUPPORT WITH WIFE'S OBLIGATION TO PAY SPOUSAL SUPPORT.

**{¶20}** In her fourth assignment of error, Wife argues that the court erred by offsetting Husband's child support obligation against Wife's spousal support obligation.

**{¶21}** We review a trial court's calculation of child support for an abuse of discretion. *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 44. "Accordingly, we will

not reverse a trial court's decision on child support unless it is 'unreasonable, arbitrary or unconscionable' in its ruling." *Id*., quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶22}** If the combined gross income of both parents is greater than $150,000 per year, the court shall determine child support on a "case-by-case basis and shall consider the needs and the standard of living of the children who are subject of the child support order and of the parents." R.C. 3119.04(B). In calculating the amount of child support, the court shall award "no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of [$150,000], unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." R.C. 3119.04(B).

**{¶23}** Using the basic child support schedule and a combined gross income of $150,000, the court determined an annual amount of $15,218 in child support. The court calculated $8,257 as Husband's percentage. However, the court found that the calculated amount was "unjust and inappropriate and not in the best interest of the child" because the court had ordered Wife to pay spousal support. *See* R.C. 3119.23(C). The court concluded that Husband's child support obligation should be offset with Wife's spousal support obligation. To do this, the court explained that it had subtracted the full amount of child support ($15,218) from Wife's income and then equalized the parties' net income to determine the amount of spousal support. The court noted that the parties' incomes were not set exactly equal because their incomes fluctuated based on periodic bonuses.

**{¶24}** Wife argues that the court erred in offsetting her spousal support with Husband's obligation of child support. By offsetting these obligations, Wife asserts, she was "denied a tax

deduction for the full amount of her spousal support payments." However, the court "considered the tax consequences of an award of spousal support as set forth in the [c]ourt's FinPlan analysis. Court Exhibit 1."

{¶25} "If, in exercising its discretion, the domestic court's reasoning process in support of its order was sound, we will not disturb its judgment." *Longo v. Longo*, 11th Dist. Geauga Nos. 2008-G-2874 & 2009-G-2901, 2010-Ohio-3045, ¶ 12. Having reviewed the record, including the court's "FinPlan analysis," we cannot conclude that the court acted unreasonably, arbitrarily, or unconscionably in offsetting Wife's spousal support with Husband's child support.

{¶26} Wife's fourth assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF WIFE AND AGAINST THE BEST INTERESTS OF THE PARTIES' MINOR CHILD BY GRANTING HUSBAND A DOWNWARD DEVIATION IN HIS CHILD SUPPORT OBLIGATION BASED ON WIFE'S PAYMENT OF SPOUSAL SUPPORT TO HUSBAND INCREASING, NOT DECREASING, HUSBAND'S TOTAL INCOME.

{¶27} In her fifth assignment of error, Wife argues that the court erred in calculating Husband's child support obligation. Specifically, Wife argues that the court failed to account for Husband's increased income due to her spousal support payments to him.

{¶28} Because Wife's fifth assignment of error also challenges the order of child support, we incorporate the standard of review set forth in her fourth assignment of error and review for an abuse of discretion. *See Fetzer*, 2014-Ohio-747, at ¶ 44.

{¶29} R.C. 3119.23(C) permits a court to consider "[o]ther court-ordered payments" when determining whether to grant a deviation from the basic child support schedule. Wife argues that the court misapplied R.C. 3119.23(C) because it should only be used as a basis for deviation when the obligor's income is reduced by the other court-ordered payments, not when

the obligor's income is increased. While Wife cites an example of the statute applied this way, she does not cite any authority to support her argument that it may only be used in those circumstances. *See White v. Yuhas*, 9th Dist. Medina No. 03CA0135-M, 2004-Ohio-5449.

{¶30} Here, the court determined that Wife owed Husband spousal support and Husband owed Wife child support. After considering the tax implications, the court determined that it would offset the amount of spousal support with the child support, resulting in only one monthly payment being made from Wife to Husband. We have found no authority restricting R.C. 3119.23(C) to circumstances in which the obligor's income is reduced because of the other court-ordered payments. Further, Wife does not explain why the court could not have considered the cross obligations under R.C. 3119.23(P) ("[a]ny other relevant factor") in its decision to offset the payments.

{¶31} Having reviewed the record, we cannot conclude that the court abused its discretion in deviating Husband's child support obligation downward to $0. The court, after considering the relevant tax implications, properly offset Wife's spousal support obligation with Husband's child support obligation.

{¶32} To the extent that Wife argues that the court erred in using the shared parenting plan to calculate the amount of Husband's child support, we do not agree. Wife argues that she is providing "full-time care" for the minor child, A.H. However, Wife acknowledges that A.H. is with Husband on alternating weekends. The child support computation worksheet indicated that Wife had the child 54.65% of the time.

{¶33} Wife's fifth assignment of error is overruled.

Assignment of Error Number Six

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE
OF WIFE AND AGAINST THE BEST INTEREST OF THE PARTIES' MINOR

CHILD BY ADOPTING A SHARED PARENTING PLAN THAT IS CONTRARY TO THE AGREEMENT OF THE PARTIES REACHED ON THE RECORD DURING TRIAL.

**{¶34}** In her sixth assignment of error, Wife argues that the court erred in adopting Husband's proposed shared parenting plan.

**{¶35}** "A trial court's decision to adopt a shared parenting plan is reviewed under an abuse of discretion standard." *Braidy v. Braidy*, 9th Dist. Summit No. 26608, 2013-Ohio-5304, ¶ 22. An abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶36}** Wife argues that the court erred in adopting Husband's proposed shared parenting plan because, according to Wife, the proposed plan does not articulate the agreement between them. The only specific error Wife cites to is Article I(B) which states: "Unless otherwise mutually agreed, [A.H.] shall continue to attend school in the Twinsburg Public School District."

**{¶37}** On the second day of trial, Wife informed the court that she had accepted a new job offer in Columbus and requested the court permit her to move to Columbus with A.H. The attorneys for both parties attempted to put an agreed shared parenting plan on the record. Husband's attorneys agreed not to object to Wife's move to Columbus. Wife's attorneys "agreed to the concept of shared parenting," but objected to the adoption of the written shared parenting plan. Wife, however, did not articulate any specific objections to the written parenting plan. Nevertheless, in the final divorce decree, the court adopted Husband's proposed shared parenting plan "except * * * [that] Wife shall be the residential parent for school purposes." Because Wife was designated the residential parent for school purposes and the court and the parties were aware that Wife was living in Columbus with A.H. at the time the order was entered, Art. I(B) of the shared parenting plan does not apply.

{¶38} To the extent that Wife argues the Shared Parenting Plan does not accurately reflect the parties' agreement, she has not cited us to any particular provision that conflicts with the testimony at trial. "If an argument exists that can support [Wife's] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶39} Wife's sixth assignment of error is overruled.

Assignment of Error Number Seven

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ISSUING A SEPARATE ORDER HOLDING WIFE IN CONTEMPT FOR PAYMENTS NOT INCLUDED IN THE MOTION FOR CONTEMPT AND THEN INCORPORATING AN AWARD OF THOSE ADDITIONAL PAYMENTS INTO THE DECREE.

{¶40} In her seventh assignment of error, Wife argues that the court erred in finding her in contempt for matters that were not included in Husband's motion for contempt and for incorporating that judgment into the final divorce decree.

Contempt of court consists of two elements. The first is a finding of contempt of court and the second is the imposition of a penalty or sanction, such as a jail sentence or fine. Until both a finding of contempt is made and a penalty imposed by the court, there is not a final order.

*Keating v. Keating*, 9th Dist. Lorain No. 02CA007984, 2002-Ohio-3865, ¶ 4. An ability to purge the contempt does not prevent a final, appealable order. *See Hetterick v. Hetterick*, 12th Dist. Brown No. 2012-02-002, 2013-Ohio-15, ¶ 17-20.

{¶41} In December 2012, Husband filed a motion for contempt, asserting that Wife was not paying the first mortgage in compliance with the court's temporary order. A hearing was held in March 2013. A magistrate found Wife in contempt and sentenced her to 10 days in jail, but suspended the sentence until September 9, 2013, giving Wife the opportunity to purge the contempt by paying $18,034 in missed mortgage payments, and $625 in Husband's attorney's

fees.  Wife filed objections to the magistrate's decision.  On July 16, 2013, the court overruled Wife's objections, found her guilty of contempt, and imposed the same sentence recommended by the magistrate (including the ability to purge).  Wife did not appeal this order.

{¶42}  To the extent that Wife challenges the court's finding of contempt, this argument is not properly before this court on appeal.  The court's July 16, 2013 order was a final, appealable order.  However, Wife has appealed only from the final divorce decree.

{¶43}  Therefore, we limit our review to her argument that the amount due from the contempt finding could not be included in the final decree because it stemmed from a temporary order.  Wife's citation to *Colom v. Colom*, 58 Ohio St.2d 245 (1979), to support her argument is confusing at best.  *Colom* does not stand for the proposition that amounts due under temporary orders cannot be entered into a final decree.  Instead, *Colom* states that the right to enforce a temporary order "does not extend beyond the decree, unless [the temporary orders] have been reduced to a separate judgment or they have been considered by the trial court and specifically referred to within the decree."  *Colom* at syllabus.  The court found Wife to be liable for payments she had not made according to the temporary orders and entered a judgment against her.  We are not aware of any authority that prohibits the court from including a reference to this amount in the final decree.

{¶44}  Wife's seventh assignment of error is overruled.

### Assignment of Error Number Eight

THE TRIAL COURT ERRED AS A MATTER OF LAW TO WIFE'S PREJUDICE IN THE DIVISION OF PROPERTY BY THE TRIAL COURT'S ERRONEOUS CHARACTERIZATION OF WHAT CONSTITUTES MARTIAL PROPERTY.

**{¶45}** In her eighth assignment of error, Wife argues that the court erred in finding that Wife had not proven financial misconduct. Specifically, Wife argues that the court erred in "not hold[ing] Husband accountable for squandering and hiding marital property[.]"

**{¶46}** A trial court's determination as to whether a party has committed financial misconduct is reviewed for an abuse of discretion. *Orwick v. Orwick*, 7th Dist. Jefferson No. 04 JE 14, 2005-Ohio-5055, ¶ 26. An abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶47}** "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). "The term 'financial misconduct' implies some type of wrongdoing such as interference with the other spouse's property rights." (Internal citations omitted.) *Najmi v. Najmi*, 9th Dist. Lorain No. 07CA009293, 2008-Ohio-4405, ¶ 23, quoting *Bucalo v. Bucalo*, 9th Dist. Medina No. 05CA0011-M, 2005-Ohio-6319, ¶ 23. Financial misconduct, in the context of R.C. 3105.171(E)(4), requires "some element of wrongful intent or scienter[.]" *Orwick* at ¶ 25. "Because financial misconduct involves some element of profit or interference with another's property rights, the time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter." *Downey v. Downey*, 9th Dist. Summit No. 23687, 2007-Ohio-6294, ¶ 17, quoting *Rinehart v. Rinehart*, 4th Dist. Gallia No. 96 CA 10, 1998 WL 282622, *12 (May 18, 1998). If there is a significant gap in time between the alleged financial misconduct and the filing of divorce, some other evidence must be presented to establish a wrongful intent. *Orwick* at ¶ 34. The party complaining of financial misconduct has the burden of proof. *Najmi* at ¶ 23.

{¶48} Wife testified that she had placed a recording device in the marital bedroom and had recorded Husband on the phone telling his girlfriend that he wanted to send her $30,000 so that Wife would not receive a portion of the money. While the court did not allow this recording to be admitted into evidence, Husband acknowledged that he had a discussion with his girlfriend about possibly sending her money to avoid having to split it with Wife. However, Husband testified that he did not do so because both his attorney and his girlfriend told him not to hide money. Husband denied hiding any marital monies.

{¶49} Husband testified that he travelled extensively for work and was enrolled in various reward programs, including frequent flyer miles and Marriott Rewards. Husband stated that the family used the rewards programs during the marriage, but that Wife had not used any since the separation because they were all in his name. Husband admitted to using 150,000 miles to fly his girlfriend to Phuket, Thailand and another 70,000 to fly his girlfriend to meet him on a different occasion. Husband further testified that he used Marriott Rewards points for his stay in Phuket and for a stay in Hilton Head with another girlfriend. These trips were all taken during the pendency of the divorce. There was no testimony regarding when the various rewards would expire or the monetary value of the rewards spent on Husband's girlfriends.

{¶50} Husband testified that he lost approximately $6,740 in martial money gambling. The report of Husband's financial expert, Mark Bober, show that these losses occurred approximately two weeks before Husband filed for divorce and at the same time Husband paid $3,000 to retain a divorce attorney and set aside another $13,000 for attorney fees that he expected to incur during the divorce. Husband testified that he sometimes gambled on family vacations, but that the $6,740 in gambling losses was not part of a family vacation. Bober's report did not include any other cash withdrawals for gambling within the prior two years. Wife

testified that she did not know anything about Husband's gambling in the weeks preceding the divorce until she reviewed Bober's report in preparation for trial.

{¶51} In the final divorce decree, the court stated that "Wife's allegations about Husband's financial misconduct focused on his being unable to account fully for how his income was spent and for the proceeds from the loans against the parties' 401(K) accounts." However, at trial, Wife also argued that Husband's gambling losses of $6,740 just before filing for divorce was financial misconduct. During the trial, the court found that both parties occasionally gambled so that Husband's $6,740 loss was not a waste of marital assets. The evidence does not support this finding. Husband did testify that he would occasionally gamble on family vacations and that he and Wife had taken a couple of trips to Las Vegas during their marriage. However, in the two years prior to the divorce, the only withdrawals for gambling noted on the financial report submitted by Husband's financial expert were in the two weeks prior to the divorce. In light of the gambling losses occurring at the same time Husband was retaining a divorce attorney, Wife's testimony that she did not know anything about Husband's gambling at that time, Husband's own financial statement that did not note other gambling in the prior two years, and Husband's testimony that he had considered hiding assets from Wife, we conclude the court abused its discretion in finding that Wife had not met her burden of establishing financial misconduct with respect to the $6,740.

{¶52} Wife's eighth assignment of error is sustained and the case is remanded for the court to consider whether Wife should have been compensated for Husband's $6,740 in gambling losses.

Assignment of Error Number Nine

THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF WIFE BY FAILING TO ENFORCE ITS ORDER THAT HUSBAND ACCOUNT FOR $167,000 GONE MISSING.

{¶53} In her ninth assignment of error, Wife argues that the court erred by failing to enforce its order for Husband to account for $167,000 of marital funds. Specifically, Wife argues that the court erred in not finding Husband in contempt for his failure to provide her with a full accounting.

{¶54} "This [C]ourt will not overturn a lower court's determination in a contempt proceeding absent an abuse of discretion." *In re A.S.*, 9th Dist. Summit No. 26731, 2013-Ohio-4170, ¶ 8, quoting *Malson v. Berger*, 9th Dist. Summit No. 22800, 2005-Ohio-6987, ¶ 6. An abuse of discretion indicates that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶55} In preparation for trial, Wife hired a forensic accountant and requested that Husband provide an accounting of his income from January 2009 until December 2011. At an April 2012 hearing, Wife explained that her expert could not account for a total of $167,000 of Husband's income and needed additional documents. Husband argued that he did not have the ability to provide an accounting of every penny he had spent over the past three years. The court ordered "both parties to provide and exchange an accounting of all monies withdrawn from any account since July 15, 201[1], to the best of their ability." In September 2012, Wife filed a motion for contempt, arguing that Husband had not accounted for the $167,000. The court deferred Wife's motion until the final hearing.

{¶56} At trial, Wife's financial expert, Raymond Dunkle II, testified that he could not account for approximately $60,000 of Husband's income that had been earned during the

pendency of the divorce (from August 2011 through December 2011). Husband's W2s and tax returns were admitted into evidence at trial. Wife does not argue that Husband failed to disclose his income documents, only that she does not know what he was spending his money on during the divorce. Under the circumstances of this case, we fail to see the import of what Husband was spending his money on during the divorce. The court was aware of both parties' incomes and had issued temporary orders allocating the marital debts. Further, the court, after hearing evidence, ordered Wife to pay Husband "$2,419.24 to equalize payment of household expenses for the period [of] August 5, 2011, to September 30, 2011" (from the time the complaint for divorce was filed until Husband moved out of the martial residence).

**{¶57}** As to the remaining funds unaccounted for, approximately $107,000 in total, Dunkle testified that all of those funds were directly deposited into a bank account, but he was unable to determine how those funds were spent. Bober, Husband's financial expert, testified that numerous cash withdrawals were made by both parties over the years, and therefore, no documents existed to account for how that money was spent. Husband testified that he provided Bober with a verbal explanation of how he spent the cash that he withdrew.

**{¶58}** After reviewing the record, we cannot conclude that the court abused its discretion when it declined to hold Husband in contempt. Wife's ninth assignment of error is overruled.

### III

**{¶59}** Wife's first and eighth assignments of error are sustained. Wife's remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

DEAN S. HOOVER, Attorney at Law, for Appellant.

DAVID H. FERGUSON and LYNNE M. EARHART, Attorneys at Law, for Appellee.